REDLAND FRUIT COMPANY v. H. H. SARGENT.

Decided October 15, 1908.

**1.—Illegal Contract—Fundamental Error.**

If the contract pleaded and sued on is illegal because prohibited by the laws of the State against trusts and monopolies, a recovery by plaintiff presents fundamental error, which may be availed of in any stage of the proceedings, and is not waived by defendant failing to call his demurrer to the attention of the court and have action thereon.

**2.—Trusts—Inducing Persons to Trade.**

An agreement by A. to endeavor to induce his employes to trade with B. is not obnoxious to the statute prohibiting trusts and monopolies (Act of March 31, 1903, Laws, 28th Leg., p. 119).

**3.—Trusts and Monopolies—Right to Sell Goods on Premises.**

The statute prohibiting contracts creating trusts or monopolies is violated

only by a restriction of such business competition as a person has a right under the laws of the State to engage in; the right to sell goods on certain premises is derived from the owner thereof; and his contract giving it to one person only is not illegal.

**4.—Same—Cases Discussed.**

Ft. Worth & D. C. Ry. Co. v. State, 99 Texas, 34; and Lewis v. Weatherford, M. W. & N. W. Ry. Co., 36 Texas Civ. App., 48, followed; Texas & P. Coal Co. v. Lawson, 89 Texas, 394, distinguished.

**5.—Pleading.**

A petition seeking damages for violation of a contract giving plaintiff the exclusive right to sell goods on defendant's premises considered and ·held sufficient.

**6.—Statement of Facts.**

Questions concerning the sufficiency of evidence are not considered in the absence of a proper statement of facts, a copy instead of the original being sent up in disregard of the law. (Act of May 25, 1907, Laws 30th Leg., 1st Called Session, p. 509.)

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*Jno. M. Scott,* for appellant.—An objection that the contract sued on is void will be considered on general demurrer, though not specially pleaded. Fuqua v. Pabst Brewing Co., 90 Texas, 301; Texas and Pac. Coal Co. v. Lawson, 89 Texas, 394; Texas Brewing Co. v. Templeton, 90 Texas, 277; Missouri, K. & T. Ry. v. Chenault, 92 Texas, 504.

As applied to the facts in this case, a "trust" is a combination of capital, skill or acts by two or more persons, to create or carry out restriction in trade; to prevent or lessen competition in the sale or purchase of merchandise, produce or commodities, and any contract or agreement creating such combination is absolutely void, and not enforcible in law or equity. Ch. 94, sec. 1, p. 119, Acts of the Twenty-eighth Legislature, 1903; Texas & Pac. Coal Co. v. Lawson, 89 Texas, 394, and authorities above cited.

No principle is more firmly established than that remote and speculative damages can not be recovered on account of a breach of contract, when that breach is unmixed with the elements of fraud. Jones v. George, 56 Texas, 153; Voorhees v. Fry, 52 S. W., 580; Missouri, K. & T. Ry. v. Wise, 3 Texas Civ. App., 461-2; Crouch v. Osborn, 23 S. W., 937-8; Elmendorf v. Classen, 92 Texas, 477; Couch v. Parker, 1 Texas Civ. App., 193; Waco Tap Ry. v. Shirley, 45 Texas, 372; Sabine, etc., Ry. Co. v. Joachimi, 58 Texas, 460.

A contract by two or more persons, firms or corporations combining their capital, skill or acts, to create or carry out restrictions in trade or to prevent or lessen competition in the sale or purchase of merchandise, produce or commodities, is a trust within the meaning of our statutes, and therefore void, and no action can be founded thereon. Ch. 94, sec. 1, p. 119, Acts of the Twenty-eighth Legislature, 1903; Texas & Pac. Coal Co. v. Lawson, 89 Texas, 394; Fuqua v. Pabst Brewing Co., 90 Texas, 301; Texas Brewing Co. v. Templeton, 90 Texas, 277.

*Scott & Lane,* for appellee. ·

HODGES, ASSOCIATE JUSTICE.—The appellee recovered a judgment in the court below against the appellant for damages on account of the alleged breach of a contract theretofore made and entered into between the parties. The allegations in the appellee Sargent's petition are substantially as follows: That the appellee and one E. L. Harper, who was superintendent and manager for the appellant company, entered into the following written contract:

"The State of Texas, county of Harrison.
"September 4, 1905.
"This agreement made and entered into between E. L. Harper, superintendent of the Redlands Fruit Company, of the first part, and H. R. Sargent, of the second part, witnesseth: That the said E. L. Harper, superintendent, for and under instructions of said company, and in and for the consideration of five percent on all sales of goods made by the said H. R. Sargent, the second party, on the premises of the said company, does agree for the said H. R. Sargent to erect a store house on their premises, and to conduct a general merchandise business, and the company will endeavor to give the said H. R. Sargent their trade from the said plantation, and will give no other rights on the premises to other parties for the sale of merchandise. The said H. R. Sargent shall sell no whisky or other intoxicating drinks on the premises of said company. The said Sargent shall have the right to removal of said store house and the right to sell same. The said company acquires no claim or title to said store house building, and the said Sargent no rights on premises, only so far as terms of the agreement.
"E. L. Harper,
"Supt. Redlands Fruit Company.
"H. R. Sargent."

It is alleged that this contract was to last five years; that in pursuance thereof the appellee, plaintiff below, did erect a store house at an expense of $750, and put therein a stock of goods which, it is claimed, was worth at the time of the alleged breach from $700 to $1,000; and that the reasonable profits which he would realize from the sale of those goods would have been $4100 per year; that but for the contract aforesaid he would not have erected the house nor bought the stock of goods; that the appellant company broke the contract it had thus entered into by throwing the trade of the plantation to others and allowing others to erect a store house on its premises; that on account of the breach of the said contract by the appellant company the appellee's trade, and the profits therefrom, which, he says, would have amounted to $5,000, left him. Appellee also alleges that this house was rendered valueless to him, except to the extent of what it would be worth in lumber, which was estimated at $50; that his goods deteriorated to the extent of $750 on account of being left on his hands. He sues to recover the aggregate sum of $6,450.

The defendant answered by a general demurrer, general denial and specially, that appellee breached the contract by selling intoxicating liquors on the premises, and in not paying over the five percent commissions provided for in the contract.

The case was submitted to the court without a jury, and a judgment rendered in favor of the appellee for the sum of $240. From that judgment this appeal is prosecuted.

There are five assignments of error in the record, two of which assail the refusal of the court to sustain the appellant's general demurrer. The remaining three attack the grounds upon which the court predicated its judgment in matters of facts.

The first question that presents itself for our consideration is, whether or not the contract, as pleaded by the appellee, is void by reason of being in conflict with the provisions of what is known as the anti-trust law of the State.

The first error assigned complains of the refusal of the court to sustain the general demurrer interposed by the appellant in the trial below. It appears that the general demurrer was filed, but not called to the attention of the trial court, and was not passed on. The reason urged in the appellant's brief as grounds upon which the court should have sustained its general demurrer is that the contract sued upon and set out in the appellee's original petition shows upon its face that it is in violation of the law of this State prohibiting the formation of trusts and monopolies. If the appellee's cause of action as stated shows that he is undertaking to recover damages for the breach of an illegal contract, then the objection may be made at any stage of the proceedings. The objection goes to the substance of the petition, and the error, if it exists, is fundamental. Grant v. Whittlesy, 42 Texas, 320; Norris v. Logan, 94 S. W., 123; Schuster v. Fredenthal, 74 Texas, 55; 11 S. W., 1051; Alamo Ins. Co. v. Davis, 45 S. W., 605; 6 Amer. & Eng. Ency. Plead & Prac., 380.

The question then is: Do the terms of the contract sued on violate the anti-trust statute? The provisions of the contract pointed out as being obnoxious to that statute are those by which Sargent is given the exclusive right to sell goods on the appellant's premises, and by which appellant bound itself to endeavor to induce its employes to trade with Sargent. In the Acts of 1903, p. 119, a trust is defined as "A combination of capital, skill or acts by two or more persons . . . for either, any or all of the following purposes: (1) To create, or which may tend to create, or carry out restrictions in trade or commerce, or aids to commerce, or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the law of this State." An undertaking on the part of the appellant to endeavor to induce its employes to trade with the appellee could not be regarded as any violation of law, and the vice, if any, in the contract must be that portion which gives to the appellee the exclusive right to sell goods on the appellant's premises. If this is in violation of the anti-trust statute, then the assignment should be sustained, otherwise it should be overruled.

We do not think it was the purpose of the statute to prevent the making of exclusive contracts of any kind whatever. Such an inhibition would be productive of a greater evil than that which the law attempts to remedy. The business competition which can not be restricted is that which, under the "laws of the State, a person is permitted or authorized" to engage in. The privilege of selling goods upon the premises of an-

other is not derived from the laws of the State, but from the consent of the owner. Fort Worth & D. C. Ry. Co. v. State, 99 Texas, 34; Lewis v. Weatherford, M. W. & N. W. Ry. Co., 36 Texas Civ. App., 48. In the first case cited above a contract had been entered into between the railway company and the Pullman Company, by the terms of which the latter was given the exclusive right of furnishing the railway company sleeping cars on all of its lines for the term of fifteen years. In an opinion holding that this contract did not violate the anti-trust statute, the court said: "Waiving the fact that, at the time the law of 1903 was enacted, there was no other person or company engaged in the like business in Texas, we come to the question: Did the railroad company have the lawful right to make a contract with the Pullman Company whereby it excluded all other companies for fifteen years from furnishing to the railroad company sleeping cars for the use on all of its lines? That question suggests this: Did all sleeping-car companies have a right to demand of the railroad company to haul their coaches on its railroad? If yea, the contract restricted the free pursuit of a lawful business, and constitutes a trust under the Act of 1903; otherwise the law has not been violated by the agreement. . . . This contract in no way interfered with the rights of any other sleeping-car company, if any existed, to build or furnish its cars to other railroads. Neither the Pullman nor any other corporation or persons had a right to have sleeping cars attached to the passenger trains of the Ft. Worth & Denver City Railroad Company. Therefore, to exclude them did not restrict 'the free pursuit of any business authorized or permitted by law,' because such business was not authorized to be pursued on a railroad without the consent of the owner; and, since no such business right existed, it could not be restricted."

In that opinion the case of Lewis v. Ry. Co. is cited with approval. In the latter case an attack was made on the contract entered into between the railway company and one Green, by which the latter was given the exclusive right to go upon the train of the railway company and solicit the transfer of baggage from passengers riding thereon. Lewis and his employes would purchase tickets, board the passenger train of the railway company, and also solicit such patronage from the railway passengers. The railway company sought to enjoin this conduct on the part of Lewis, and set up the fact that it had contracted with Green that he should have this exclusive privilege. This feature of the contract was assailed as being in violation of the anti-trust statute. The court held otherwise, and, in disposing of the question, used this language: "It is, we think, a sufficient answer to this contention that the rule or regulation of appellees by which Green was permitted to solicit the patronage of its passengers, to the exclusion of appellant, did not 'create or carry out restrictions in the free pursuit of any business authorized or permitted by the law of this State,' because the only restriction imposed is with respect to the transaction of appellant's business on appellee's passenger trains, which he is nowhere authorized or permitted by the law of this State to engage in. It is, therefore, not a restriction upon the free pursuit of his lawful business. In the sense that the regulation prevents appellant from securing the patronage of appellant's passengers, it may be said to be a restriction upon its busi-

ness. But the least reflection will show that, if this construction of the law were to be adopted, a very large percent of the everyday contracts in the business world, such as those of leasing, of agency, of service, and the like, would be reprobated—a result never dreamed of by the legislators who enacted the statute. If appellee is to be denied the relief prayed for it must be upon other grounds than that asserted in this assignment."

Applying the principles approved in the decisions quoted above, we may ask: Were any restrictions created or carried out in the contract under consideration against the free pursuit of any business which the law gave others the right to engage in? Did others have the right under the law to demand of the appellant that they be permitted to sell goods upon its premises? The right to sell upon the premises of another is not given by law, but by consent of the owner. The latter has the right to say who shall or who shall not use his premises for any such purpose. The right to give an exclusive contract for the purpose of any business is involved in every lease.

Our attention has been called to the case of the Texas & P. Coal Co. v. Lawson, 89 Texas, 394. The appellant urges with much earnestness that the language used in that case is decisive of this. We do not agree with that contention. While there is some language used in the opinion rendered by Justice Denman in the case referred to which tends to support the appellant's construction, yet the facts are different, and that language is not in harmony with the latter decisions of our Supreme Court which we have cited. If we have departed from the ruling of the court in the Lawson case we think our action is justified, not only by the latter expressions of the Supreme Court, but by sound reason as well. In the Lawson case the contract which was held to be in violation of the anti-trust statute was more far-reaching than the one here under consideration. Among other things, the coal company, the owner of the premises, bound itself not to engage in a business in competition with that carried on by Lawson. It thus, by agreement, deprived itself of a right given by law, and in so doing restricted competition to that extent. In this case the contract is susceptible of no such construction.

The second assignment of error is overruled because we do not think the pleadings were subject to the objections urged. They were sufficient to constitute a cause of action, however defectively this may have been stated.

The remaining assignments of error involve issues of fact which can not be considered because of the absence of a statement of facts such as is now required by law. The transcript contains what purports to be a copy of the statement of facts. Under the law as it now exists, in all appeals from the District Court, the original statement of facts must be sent up with the record. Laws of 1907, p. 509; Garrison v. Richards, 107 S. W., 861.

The judgment of the District Court is affirmed.

*Affirmed.*